# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KINGFLY SPIRITS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 22-50E |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| BLAKE RAGGHIANTI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## __ORDER__

Defendants' Motions to Dismiss (Docs. 117, 125, 129 & 132) will be granted, Plaintiffs' civil RICO claims will be dismissed and the Court will decline to exercise supplemental jurisdiction over the state law claims.

The length and breadth of the operative pleadings notwithstanding,[1] the dispute in this case – at its core – is quite simple.  Plaintiff Mark Willson invested over $1 million in a business venture involving the manufacture and sale of craft liquors.  The star to which he hitched his wagon was Blake Ragghianti, who − according to the pleadings – falsely "held himself out as a master distiller, who extensively studied and apprenticed with distillation processes in Italy." 2d Am. Compl. at ¶ 49.  To say that Willson has been dissatisfied with his investment would be an understatement.  Plaintiff alleges that Ragghianti engaged in widespread fraud and

---

[1]  Plaintiffs' Second Amended Complaint (Doc. 101) spans 74 pages, containing 440 paragraphs.

embezzlement.  *See generally id.* at ¶ 119.[2]

     This business dispute has resulted in preexisting, and ongoing, parallel state court proceedings, in Allegheny County (GD 20-002719) and Erie County (12021-2020). Plaintiffs attempted to "remove" the 2020 Allegheny County case to this Court.  They could not do so, given that a plaintiff cannot remove its own case.  *See* Order dated Nov. 14, 2022 in Civil Action No. 2:22-cv-00409-CB (noting that counsel's "positions appear to reflect fundamental misunderstandings regarding federal subject matter jurisdiction, the removal process and litigating in federal court more generally," and issuing a caution under Rule 11).  Counsel's attempt to remove the Erie County action met a similar fate.  *See* Order dated Nov. 14, 2022 in Civil Action No. 1:22-cv-00086-CB (rejecting Kingfly's bid to "federalize[]" the $38,000 collections-action filed by its former accountant, Tushak/Tugirls, and again cautioning counsel under Rule 11).  Although this Court has not endeavored to master the state court dockets, those cases are proceeding parallel to this action, as evinced by Plaintiffs' recent Motion for a Protective Order, which was summarily denied.  *Compare* Doc. 165 (seeking relief here, in conjunction with state court proceedings) *with* text-Order at Doc. 166 (explaining that "[t]he Motion addresse[d] filings and litigation in state court cases that [were] not before this Court," and indicating that "[r]elief regarding the state case(s) must be sought in the court(s) in which they [were] pending").[3]

---

[2] Joining Willson as Plaintiffs are Ebbrezza, a company of which he is sole owner; and Kingfly, the entity into which Willson's investments were "poured" (pun acknowledged).  Willson now has a controlling interest in Kingfly.  Given that the core dispute is between Willson and Ragghianti, the Court at times will refer to Willson as Plaintiff, with Ebbrezza's and Kingfly's interests being implicit.

[3]  Counsel's questionable litigation tactics are not limited to the preexisting state court cases (one of which was initiated by Kingfly, itself).  Counsel also previously requested, with no legal support, the entry of an unnoticed TRO to seize disputed property (barrels of spirits), *see* text-

The clear overlap with state court litigation aside, this Court must assess the sufficiency of Plaintiffs' federal claims. The proposed basis for federal jurisdiction is civil RICO, and Defendants' Motions to Dismiss challenge the sufficiency of such allegations.

While a review of the docket in this case suggests otherwise, what is alleged here is deceptively simple. Essentially, every individual or entity to have touched upon the business dealings between Willson, the investor − and Ragghianti, the alleged fraudster − are claimed to have engaged in a widespread agreement to commit racketeering. No entity to have "crossed" Willson, or to have acted in a way counter to his interests, appears to have been spared. The alleged collaborators include:

- David S. Klett, who has acted as counsel for Ragghianti (and, it appears from the pleadings, made the seemingly regrettable decision to become involved in Ragghianti's/Willson's/Kingfly's business adventures), *see* 2d Am. Compl. at ¶¶ 85, 150(a);

- Justina Tushak and Tugirls, who performed bookkeeping, accounting and tax services for Kingfly, and who claim not to have been paid, *compare id.* at ¶ 310 *with* discussion *supra* re 1:22-cv-00086-CB;

- Danielle Ragghianti, Mr. Ragghianti's wife, *see* 2d Am. Compl. at ¶ 10;

- Jörg Gerlach, and ECHT, who accepted products from Ragghianti at or around the time the feud came to fruition, *see id.* at ¶ 136;

- Conneaut Cellars, Inc., and Joal Wolf, proposed sellers of Kingfly's products, *see id.* at ¶¶ 17, 25(a) and 65;

- Former Defendant Erie Yacht Club, putative assignee and seller of a liquor recipe, *see id.* at ¶¶ 19, 86, 106;

---

Order at Doc. 28; and they sought the entry of default judgment against a party with whom they were in ongoing settlement negotiations. *See* Order at Doc. 135. While Plaintiffs' counsel have offered explanations as to the latter, upon which this Court has not opined, one thing remains clear: whether related to levels of diligence, competence or zealousness, Plaintiffs' counsel appear willing to ask for anything, of any court, at any time; and they often do not appear to concern themselves with whether their requests enjoy support in the law.

- Former Defendants The Aging Room, and its principals Gregg Threlkeld and Mark Zini, holders and sellers of subject liquor(s), *see id.* at ¶¶ 20, 25(b);

- Russ Thompson, CEO of DB Consultants, Inc., role unidentified, *see id.* at ¶ 25(c);

- Harvey Downey, President and CEO of NaviTek Machining Corporation, role unidentified, *see id.* at ¶ 25(d);

- Timothy Davis, Director of Special Projects at PANTHERRx Specialty Pharmacy, role unidentified, *see id.* at ¶ 25(e); and

- James D. Chiafullo, Esq., shareholder at Dentons Cohen and Grigsby, role unidentified, *see id.* at ¶ 25(f).

Whether the result of litigation strategy, paranoia or both,[4] all of these actors are alleged to have entered into a grand RICO enterprise, to engage in a pattern of racketeering.

Numerous courts and commentators have expressed concerns regarding the arguable overbreadth of the civil RICO statute, and the resultant threat of abuse:

> [T]he very strength of RICO—its breadth—now diffuses its focus. RICO's treble damage provision has been seized upon to convert the statute into a hodgepodge of prohibitions that now function as a tripwire that offers the lure of treble recovery to all who can squeeze their claim into some combination of RICO's 'predicate acts.' The civil penalties in RICO have thus been transformed into a fulcrum that is used to pry treble damages out of causes of action originating in divorce, trespass, legal and accounting malpractice, inheritance among family members, employment benefits and sexual harassment by a union. . . . In fact, most of the civil suits filed under the statute have nothing to do with organized crime; **they are garden-variety civil fraud cases of the type traditionally litigated in state courts**.

---

[4]  *Compare* Willson's Doc. 142 (complaining that certain Defendants have submitted "unsolicited statement[s]" in state court and here "call[ing] into question Mr. Willson's mental health and wellbeing via false statements related to [his] personal and professional life") *with* Order at Doc. 144 ("[w]hile Mr. Willson may not like . . . characterizations of his mental status and motivations, these things may happen when a party appears in a public forum to air his disputes," and "[t]he potential for the 'airing of dirty laundry,' . . . is expanded, the more parties are being sued and the broader the claims pursued by the complaining party").

DelRio-Mocci v. Connolly Props. Inc., 672 F.3d 241, 254 (3d Cir. 2012) (McKee, C.J.,

concurring) (citations to quoted and other sources, alterations and internal quotations omitted,

emphasis added).

      This is such a garden variety case.  Or, at least, it is presently being litigated as such in

the parallel state actions.  The question that remains is whether the civil RICO claims should

persist.  They should not.

      To assert an association-in-fact enterprise, Plaintiffs are required to *plausibly* allege

"the existence of an enterprise structure," *i.e.*, "something more than the fact that individuals

were all engaged in the same type of illicit conduct during the same time period."  In re Ins.

Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010) (citation to quoted source omitted).

Otherwise, "the RICO statute's allowance for association-in-fact enterprises becomes an open

gateway to the imposition of potentially massive costs on numerous defendants, regardless of

whether there is even a hint of the collaboration necessary to trigger liability."  *Id.*[5]

      74 pages and 440 paragraphs of content notwithstanding, the Second Amended

Complaint is bereft of connective tissue plausibly establishing an "enterprise structure"

tying together the various actors.  The amazing breadth of the claimed association(s) results in

Plaintiffs' own undoing.  While the pleadings contain ad nauseam assertions of legal conclusion,

in the guise of factual averment, there are no plausible allegations establishing that the numerous

individuals and entities acted together as a RICO "enterprise."

      Along the same lines, Plaintiffs fail to make plausible allegations regarding a "structure"

of the alleged association.  Although the Supreme Court in Boyle v. U.S., 556 U.S. 938 (2009)

---

[5]  Although the various Defendants' arguments for dismissal differ, at least some of them
challenges the sufficiency of Plaintiffs' association-in-fact allegations.  *See* Doc. 118 at 9-13;
Doc. 133 at 10-12.  The Court, therefore, does not reach the issue sua sponte.

clarified that the structure requirement is neither rigid nor formalistic, *some sort of structure* still is required.  In re Ins. Brokerage Antitrust Litig., 618 F.3d at 366-67.  In addition to, or as a corollary of, the existence of structure, the enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 366.

In this case, the only "purpose" plausibly alleged is the targets' having acted in a way contrary to Willson's interests.  And although connections among and between certain of the Defendants/entities are described, there are no plausible allegations of relationship, writ large, such that an enterprise of racketeering may be found.  In the same vein, while the "structure" requirement is not formalistic, there are no plausible allegations of a structure *of any kind*.[6]

In sum, Plaintiffs have failed to level plausible allegations of an association-in-fact, or of structure.  These shortcomings are fatal to their claims under Section 1962(c).  Their claims under Section 1962(b), which address the use of racketeering to acquire control over an enterprise, also fail.  Here, the enterprise alleged is an association-in-fact, and the 1962(b) claim merely reiterates the Section 1962(c) claim.  Ferguson v. Moeller, 2016 WL 1106609, *4 (W.D. Pa. Mar. 22, 2016) (citation to binding authority omitted).  The claim, on its face, is deficient.  *See id.*[7]

---

[6]  Previous iterations of the law required that the enterprise be "an entity separate and apart from the pattern of [illicit] activity in which it engages."  Gary Miller Imports, Inc. v. Doolittle, 2020 WL 7027483, *6 (W.D. Pa. Nov. 30, 2020) (citation to quoted source omitted).  Plaintiffs definitely would fail the "distinctness" requirement.  To be sure, there has been a majority-trend recognition that the distinctness requirement did not survive *Boyle* and later cases.  Nevertheless, the lack of distinctness dovetails with Plaintiffs' failure to plausibly allege any kind of structure.  At bottom, the only structure to be discerned is, if you crossed Willson, you were part of the racketeering enterprise.

[7]  Plaintiffs' references to subsections (a) and (d) go nowhere.  Subsection (a) is "directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice

As may be deduced from the discussions above, the Court believes that this matter fairly may be viewed as a "poster child" regarding the concerns associated with the civil RICO statute. Whether and how to put "the genie back in the bottle" is for Congress to decide.  What concerns the Court is whether the RICO claims should proceed.  For the reasons explained above, they should not, and Plaintiffs' federal claims will be dismissed.[8]  The instant ruling also prevents this Court, and the state courts, from having to grapple with the intractable difficulties presented by Plaintiffs' efforts to litigate their disputes in parallel state and federal actions.

For reasons that should be obvious, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Also, dismissal of the federal claims will be with prejudice for two reasons.  First, on the basis of futility.  Second, and independently, because Plaintiffs already twice have amended their pleadings, and they were expressly advised

---

of money laundering."  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993) (citation to quoted source omitted).  Having failed to plausibly allege the existence of a RICO enterprise, Plaintiffs cannot proceed under this theory.  Weir v. Cenlar FSB, 2018 WL 3443173, *8 (S.D.N.Y. Jul. 17, 2018).  Furthermore, the Court of Appeals for the Third Circuit has rejected such claims where plaintiffs "fail to explain how [they were] injured by the use or investment of racketeering income[,] as opposed to the racketeering acts themselves."  Lightning Lube at 1188 (emphasis added).  In this case, the purported injuries cannot be parsed.  Compare, e.g., 2d Am. Compl. at Count VIII (alleging that Ragghianti and his company used RICO proceeds to compete with Kingfly) with Lightning Lube (rejecting similar allegation that defendant used proceeds "to eliminate [the plaintiff] as a competitor").  Subsection (d) is not actionable absent a viable claim under subsections (a), (b) or (c).  Giovinazzo v. Deangelo, 2022 WL 795713, *8 (D. N.J. Mar. 16, 2022) ("No underlying offense, no conspiracy to commit one.") (citation to quoted and other sources omitted).

[8]  Plaintiffs' other purported bases for federal jurisdiction are easily dispensed with.  They have failed to plausibly allege that any of the applicable types of damage under 18 U.S.C. § 1030 can be traced to Defendants' alleged activity.  See Steinhardt v. Bernardsville Police Dep't, 2021 WL 3929321, *4 n.6 (3d Cir. Sept. 2, 2021).  Nor are Plaintiffs' passing references to trade secrets sufficient to state a claim under 18 U.S.C. § 1836.  Plaintiffs' primary thesis lies in the civil RICO statute.  They cannot achieve, through boilerplate incantations of Sections 1030 and 1836, what eludes them under Section 1962.

that "they must make last, best efforts at amendment, because the Court [did] not anticipate granting further leave to amend." *See* text-Order at Doc. 88.

Consistent with the foregoing, Defendants' Motions to Dismiss (**Docs. 117, 125, 129 & 132**) are **GRANTED**, and the federal claims are **DISMISSED WITH PREJUDICE**. Judgment under Rule 58 will be entered forthwith, and the case marked closed.

IT IS SO ORDERED.


September 25, 2023                                    s/Cathy Bissoon_____
                                                      Cathy Bissoon
                                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record